UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WALTER BERNARD MORTON, JR.,<br><br>    Plaintiff,<br><br> v.<br><br>J. BOLYARD, *et al.*,<br><br>    Defendants. | Civil Action No. 10-1595 (HHK) |

## MEMORANDUM OPINION

This matter is before the Court on defendants' motion to dismiss. Because sovereign immunity bars claims against the defendants in their official capacities, the Court lacks personal jurisdiction over the defendants in their individual capacities, and because plaintiff has not exhausted his administrative remedies prior to filing this action, defendants' motion will be granted.

### I. BACKGROUND

In the Superior Court of the District of Columbia, plaintiff was convicted "by a . . . jury on charges of second-degree murder while armed and related weapons offenses." *Morton v. Burns*, No. 01 CA 6368, 2002 D.C. Super. LEXIS 69, at *1 (D.C. Super. Ct. May 28, 2002). The Superior Court imposed a sentence of 21 years to life imprisonment, and its "judgment and commitment order . . . committed the plaintiff to the custody of the Attorney General of the United States." *Id.*, 2002 D.C. Super. LEXIS 69, at *2. Plaintiff has been transferred to the

1

custody of the Federal Bureau of Prisons ("BOP"), and now is incarcerated at the United States Penitentiary Hazelton ("USP Hazelton") in Bruceton Mills, West Virginia.

The claims plaintiff raises in this action arise from his employment by UNICOR while in BOP custody.[1] He alleges that defendants have denied him promotions and back pay for his UNICOR job. *See* Compl. at 11.[2] In addition, plaintiff alleges that defendants have denied him good time credit not only for vocational training through UNICOR but also for educational training through a correspondence course taken at his own expense. *Id.* at 11-12. He "is asking for all Educational Good Time to be awarded . . . and also [$] 3,750.00 for the back pay for 19 . . . months, and also Twenty Five thousand dollars for the harasment [sic] of being denied of pay raises." *Id.* at 12.[3]

---

[1] According to the BOP's website, "Federal Prison Industries (commonly referred to as FPI or by its trade name UNICOR) is a wholly owned, Government corporation established by Congress on June 23, 1934," a principal mission of which is "to employ and provide job skills training to the greatest practicable number of inmates confined within the [BOP]." *See* http://www.bop.gov/inmate_programs/unicor.jsp; *see also O'Quin v. United States*, 72 Fed. Cl. 20, 24 (Fed. Cl. 2006) ("The FPI (also known by its trade name, 'UNICOR') is a government-owned corporation that was established in 1934 to provide work programs for inmates of federal correctional facilities.").

[2] Defendants removed this matter from the Superior Court of the District of Columbia, and a copy of the Complaint was attached to the Notice of Removal [Dkt. #1]. Plaintiff submitted his Complaint on a preprinted form to which he attached a two-page typewritten document titled "Motion for Amendment to Complaint." The Court treats the "Motion for Amendment to Complaint" as plaintiff's Complaint, and because plaintiff has not numbered the pages, the Court adopts the page numbers designated by the electronic docket.

[3] To the extent that petitioner challenges the execution of his sentence by demanding an award of good time credit, he must proceed under 28 U.S.C. § 2241 in the district where he is incarcerated. *See Preiser v. Rodriguez*, 411 U.S. 475,(1973) (holding that habeas corpus is the exclusive remedy for challenges to the fact or duration of confinement, specifically discussing a claim for good time credits); *Barfield v. U.S. Dep't of Justice*, No. 04-0636, 2005 WL 551808, at *3 (D.D.C. Mar. 8, 2005) (noting parties' agreement "that the sole federal remedy for challenging the loss of good-time credits and similar duration-of-confinement claims is by a petition for habeas corpus"); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004)

The statutory bases for plaintiff's claims are not clear. Plaintiff suggests, however, that defendants' actions "constitute harassment and biased hate crime." Mem. of P. & A. in Supp. of Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") at 2 (emphasis removed). He does not name the United States or a federal government agency as a defendant, and the Court presumes, then, that plaintiff brings this action under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), which recognizes "an implied private action for damages against federal officers alleged to have violated [a person's] constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001); *see Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) ("[A] *Bivens* action is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983.").

## II. DISCUSSION

Defendants, all of whom are federal employees, move to dismiss the complaint. They argue that sovereign immunity bars plaintiff's claims against them in their official capacities, that this Court lacks personal jurisdiction over them in their individual capacities, and that plaintiff failed to exhaust his administrative remedies prior to filing this action as is required under the Prison Litigation Reform Act ("PLRA"), *see* 42 U.S.C. § 1997e(a).[4] *See* Mem. of P. & A. in Supp. of Fed. Defs.' Mot. to Dismiss Pl.'s Compl. ("Defs.' Mem.") at 6-13, 14-17.

### A. Sovereign Immunity

To the extent that plaintiff sues the defendants in their official capacities, his claims are

---

("[L]ongstanding practice confirms that in habeas challenges to present physical confinement . . . the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official.").

[4] The Court declines to address defendants' alternative bases for dismissal.

3

treated as if they were brought against the federal government itself. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent," such that "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity."). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Notwithstanding plaintiff's assertions to the contrary, *see* Pl.'s Opp'n at 6-7, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted); *see Dep't of the Army v. Blue Fox, Inc*., 525 U.S. 255, 260 (1999). Plaintiff cannot avoid this bar by naming government employees as defendants instead of the agencies for which they work. *See Clark v. Library of Congress*, 750 F.2d 89, 103 (D.C. Cir. 1984) (stating that sovereign immunity "bar[s] suits for money damages against officials in their *official* capacity absent a specific waiver by the government") (emphasis in original).

The Court concludes that sovereign immunity bars plaintiff's claims against defendants in their official capacities.

### B. *Personal Jurisdiction*

Defendants argue that the Court lacks personal jurisdiction over them in their individual capacities. Defs.' Mem. at 11-12. It does not appear that defendants are persons "domiciled in, organized under the laws of, or maintaining [their] principal place of business in, the District of Columbia" over whom "[a] District of Columbia court may exercise personal jurisdiction." D.C. CODE § 13-422. Rather, in order "to exercise personal jurisdiction over a non-resident, the Court

must examine whether jurisdiction is applicable under the relevant long-arm statute, D.C. CODE § 13-423, and must also determine whether jurisdiction satisfies the requirements of due process." *Boland v. Fortis Const. Co., LLC*, __ F. Supp. 2d __, __, 2011 WL 2685612, at *5 (D.D.C. July 12, 2011) (citing *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000)).

The long-arm statute allows a court in the District of Columbia to exercise personal jurisdiction over a non-resident defendant with regard to a claim arising from the defendant's conduct in:

(1)  transacting business in the District of Columbia;
(2)  contracting to supply services in the District of Columbia;
(3)  causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
(4)  causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. CODE § 13-423(a). The due process prong of the analysis turns on whether a defendant's "minimum contacts" with the District of Columbia establish that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). These minimum contacts must arise from "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 109 (1988) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). In other words, a "defendant's conduct and connection with the forum State are such that [he] should reasonably

5

anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

It is plaintiff's burden to make a *prima facie* showing that the Court has personal jurisdiction over the defendants. *See First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378-79 (D.C. Cir. 1988). Plaintiff, however, alleges no facts to establish a basis for asserting personal jurisdiction. It appears that the defendants work at USP Hazelton, and nothing in the complaint suggests that they transact business, supply services, or have caused tortious injury to plaintiff in the District of Columbia. Nor does plaintiff allege facts regarding defendants' minimum contacts in the District of Columbia. Federal government employment does not render these defendants subject to suit in their individual capacities in a District of Columbia court. *See Scinto v. Fed. Bureau of Prisons*, 608 F. Supp. 2d 4, 8 (D.D.C. 2009) (concluding that allegations that defendants were following and enforcing regulations originating from BOP's Washington, D.C. headquarters "are insufficient to establish personal jurisdiction over non-resident BOP employees"), *aff'd*, 352 Fed. App'x 448 (D.C. Cir. 2009) (per curiam), *cert. denied*, 130 S.Ct. 2417 (2010); *Pollack v. Meese*, 737 F. Supp. 663, 666 (D.D.C. 1990) (concluding that the court had no basis for asserting personal jurisdiction over the warden of a BOP facility in Springfield, Missouri because he "surely does not transact any business in the District of Columbia").

Defendants neither reside in the District of Columbia, nor fall within the scope of the long-arm statute, nor maintain minimum contacts in this forum.[5] For these reasons, the Court

---

[5] Defendants also argue that personal service of process has not been effected. *See* Defs.' Mem. at 10, 13. Plaintiff is proceeding *pro se* and *in forma pauperis*, and the Clerk of Court and the United States Marshals Service are responsible for effecting service of process on

concludes that it lacks personal jurisdiction over the defendants in their individual capacities.

*C. Exhaustion of Administrative Remedies Under the PLRA*

In relevant part, the Prison Litigation Reform Act ("PLRA") provides that:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Defendants move to dismiss the complaint on the ground that plaintiff "has failed to exhaust his administrative remedies with regard to [the] claims raised in this lawsuit." Defs.' Mem. at 7.

The PLRA exhaustion requirement is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002); *see Jones v. Bock*, 549 U.S. 199, 211 (2007); *see Kaemmerling v. Lappin*, 553 F.3d 669, 675 (D.C. Cir. 2008); *see also Kim v. United States*, 632 F.ed 713, 718 (D.C. Cir. 2011) (discussing requirement that a prisoner exhaust prison grievance procedures under the PLRA before filing a lawsuit). Exhaustion under the PLRA requires proper exhaustion, meaning that a prisoner must comply with all procedural rules, including filing deadlines, as a precondition to filing a civil suit in federal court, regardless of the relief offered through the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Typically, then, a prisoner may file a civil action concerning conditions of confinement under federal law only after he has exhausted the prison's administrative remedies. *Jackson v. District of Columbia*,

---

his behalf. *See* 28 U.S.C. § 1915(d). Under these circumstances, the Court will deny defendants' motion to dismiss under FED. R. CIV. P. 12(b)(4) for insufficient process and FED. R. CIV. P. 12(b)(5) for insufficient service of process.

254 F.3d 262, 269 (D.C. Cir. 2001).

The BOP's Administrative Remedy Program is the means by which an inmate "seek[s] formal review of an issue relating to any aspect of his[] own confinement." 28 C.F.R. § 542.10(a). Generally, "an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). If an informal resolution is not achieved, the inmate may submit a formal written administrative remedy request. 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response at this first level of the process, he "may submit an [a]ppeal to the Regional Director," and if he is satisfied with the Regional Director's response, he "may submit an [a]ppeal . . . to the General Counsel" at BOP's central office. 28 C.F.R. § 542.15(a)

According to defendants, plaintiff "filed an administrative remedy request, #566839-F1, at the institutional level regarding his request to be given a grade one position and back pay for fifteen months," but has not "file[d] at the regional and central office levels." Defs.' Mem., Ex. A (Plumley Decl.) ¶ 4. Plaintiff correctly notes that exhaustion of administrative remedies is an affirmative defense, *see* Pl.'s Opp'n at 8, such that he is not required to allege exhaustion in his complaint. *See Jones*, 549 U.S. at 215-16. He appears instead to assert that further pursuit of an administrative remedy would be futile. *See* Pl.'s Opp'n at 8 ("Plaintiff exhaust remedy to the warden level knowing that at the known response that rebutt [sic] from informal resolution was just countless[].").

"Even if an inmate believes that seeking administrative relief from the prison would be futile and even if the grievance system cannot offer the particular form of relief sought, the

8

prisoner nevertheless must exhaust the available administrative process." *Kaemmerling*, 553 F.3d at 675 (citing *Booth*, 532 U.S. at 739, 741 & n.6). A matter involving UNICOR employment may be addressed through an inmate grievance. *See Garfield v. Fed. Prison Indus., Inc.*, 3 Fed. App'x 292 (6th Cir. 2001) (affirming dismissal of *Bivens* action brought by federal prisoner alleging denial of longevity pay for prior employment with UNICOR); *Heard v. Williamson*, No. 1:CV-07-00254, 2008 WL 191810 (M.D. Pa. Jan. 22, 2008) (dismissing complaint alleging violation of constitutional rights for issuance of incident report resulting in temporary reduction in pay for UNICOR job); *Gordon v. Lappin*, No. 06-0427, 2006 WL 2228932, at *2 (D.D.C. Aug. 3, 2006) (dismissing prisoner's complaint alleging an unconstitutional transfer from one penitentiary to another resulting in the "loss of UNICOR Grade 2 Pay"). Only "if 'the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint'" is plaintiff relieved of his obligation to complete the inmate grievance process. *Kaemmerling*, 553 F.3d at 675 (quoting *Booth*, 532 U.S. at 736). Plaintiff makes no such showing, and the Court concludes that plaintiff failed to exhaust the available administrative remedies prior to filing the action.

### III.  CONCLUSION

For the reasons discussed, the Court will grant defendants' motion to dismiss. An appropriate Order accompanies this Memorandum Opinion.

DATE: September 9, 2011

/s/
HENRY H. KENNEDY, JR.
United States District Judge